**George W. LEWIS, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 14450.**

United States Court of Appeals Ninth Circuit.

June 30, 1955.

James E. Burns, Henry W. Howard, San Francisco, Cal., for appellant.

Lloyd H. Burke, U. S. Atty., John Lockley, San Francisco, Cal., for appellee.

Before ORR and FEE, Circuit Judges, and JAMES M. CARTER, District Judge.

JAMES ALGER FEE, Circuit Judge.

Lewis was indicted in three counts for attempting willfully and knowingly to de-

---

feat and evade income taxes by filing in each instance a false and fraudulent return: (1) understating his income in the amount of $187,817.22 for the year 1947, the return showing a tax due of $2,018.10 when actually $145,761.90 was due, (2) understating the income of his wife for the same year by $185,757.38, the return showing $2,884.55 due, whereas $146,189.40 was actually due, and (3) understating income and taxes of husband and wife for the year 1948, the return setting forth an income of $115,153.66 and a tax due of $53,113.62, while the true income was $308,099.51 and the tax due thereon $199,834.82.

The trial was before a jury. Defendant made various motions, the gist of all of which is that the government had not proved its case by evidence relevant to net worth and expenditures. The government introduced evidence tending to prove income by showing that defendant had spent, invested or loaned $1,604,608.71 from 1942 to 1948, and that he had available from earnings, gifts, repayment of loans and all other disclosed sources a total of $771,615.65 during these same years. There was also evidence which tended to show that, allowing all adjustments for capital gains and other increases, defendant had net taxable income greatly in excess of the amount disclosed on his tax returns and those of his wife for each year from 1942 to 1948, both inclusive. The sources of income were probed, namely: defendant's many legitimate businesses and also his considerable involvement in gambling. It was also shown that defendant kept no records of his gambling operations, loans, investments or sources of income. Records of such transactions kept by other persons for their own purposes tended to establish the accuracy of the contentions of the government. The inference that the expenditures were of money from unreported taxable income was one which a reasonable person could draw from this evidence. The jury obviously did draw this inference and convicted defendant. Their deliberations were probably assisted by defendant's explanation of the discrepancy between unreported income and established outgo. Defendant testified he had a million in currency acquired prior to the years in question. He explained he kept this hoard in suitcases.

The criticism of the defendant is that the government did not attempt to show either for the year 1947 or the year 1948, the two years in which the defendant was charged with evasion, (1) that the records from which his tax returns were prepared were inadequate for that purpose, (2) what the net worth of defendant was at the beginning of both of those years, or (3) that defendant had a source of income for those years other than that reported.

The appeal seems to have been prosecuted in order to take advantage of any change in the attitude of the Supreme Court upon the net worth and expenditure approach in such cases. This matter has now been laid at rest by the recent opinions announced by that court.

The claim is made that the case at bar is to be distinguished from such cases on the ground that the unreported income here does not come from the "same disclosed sources as produced the taxpayer's reported income". Holland v. United States, 348 U.S. 121, 126, 75 S.Ct. 127, 131. As we have been admonished, this case is reviewed bearing constantly in mind the difficulties that arise when circumstantial evidence is the chief weapon of a method which is in itself only an approximation. In the past, such has been the policy of this Court in relation to these cases.

In this case at the outset, the absence of personal records is a circumstance of considerable weight. Men who have large financial interests do not normally in this day and age fail to have records. This is one of the stock criteria which a jury may take into consideration when determining whether the intent is fraudulent or no. The records here were not appropriate to the business in which he was engaged. It was not a case of inadequacy for defendant either kept no books at all or destroyed or concealed those which he had kept. The "net worth"

method of approach was developed to meet just such a situation, in order that skillful concealment should not present a barrier to a different form of proof.

■ Defendant makes a point about his cooperation with the investigative officers in furnishing documents and records, including checks, and complains that the record does not show intent or willfulness by the admitted omission of certain items of income. The intent of defendant was in issue, and the fact of specific fraudulent intent was found by the jury under appropriate instructions which are not challenged. There was evidence to support the finding.

■ The difficulty of convincing a jury of the existence of substantial amounts of cash not considered in the net worth computation is mentioned. But here the explanation of defendant that for several years he kept a million in currency in suitcases throws considerable doubt either on his veracity or upon his common sense. Of course, the lack of records is of great importance here. There were no documents to indicate that defendant had acquired such a sum of money in years prior to his income statements introduced in evidence, or even to show these returns were false for years as to which the statute of limitations had passed. The gambling activities of defendant point plainly to a source of inordinate income. If there were not a complete absence of records, some evidence might have been obtained showing these profits were obtained in some other year. A phenomenon closely allied to this discussion is the failure of defendant to prove the time and methods of acquisition of his suitcase hoard.

■ There is objection because the government did not establish a definitive starting point. But there is no doubt a point was chosen and, if accepted by the jury, was sufficient. The weight of the objection was that it was established only by admission of defendant in an attempt to get the agents to make a compromise of a previous deficiency in tax. However, this admission was corroborated by the circumstances under which it was made.

Defendant offered to settle a liability of approximately $4,000.00 by payment of $1,500.00 in installments. He accompanied this with an affidavit that his total assets amounted to about $10,000.00. It seems this particular admission cannot be reconciled with concern for quick settlement rather than an honest search for truth. If he lied to avoid tax then with $1,000,000.00 in his possession and now admits it, the jury could appraise his present testimony accordingly. But it is said that about the same time he gave the government agents a lead. While an investigation was being conducted, which resulted from the receipt of a crank letter by the Bureau of Internal Revenue, defendant stated he had a million in cash in a suitcase in the room at the time. Even on the cold record, this sounds fanciful. Its weight depends on the credibility of defendant, as it was not otherwise corroborated.

■ Another danger which has been suggested is that there may be confusion resulting in conviction based upon bare figures alone computed by the government. But in this case the minor amounts reported in prior years, while not to be taken into consideration to find guilt in years other than those charged in the indictment, had probative value when the tremendous expenditures in the years for which he was indicted are considered. There is difficulty in all such cases in allocating to the respective indictment years the deficiency. But here the accounting of the government showed the expenditures, and the tracing went back for several years to show that there were no possible sources of the money so spent. To the ordinary mind, this, coupled with the showing of lack of sources, would indicate that the money was made within the year. In fact, the circumstances of this case seem to point irrefutably to the conclusion beyond a reasonable doubt. There was no shifting of the burden. If defendant had had proof of sources in some year past which he did not report, he could have brought in the proof and thereby the case might have been destroyed. But he was either

unwilling or unable to produce the proof. The mere possibility that the figures of the government might have been explained by sources of income proven in prior years does not show that the burden of proof was shifted. The same situation may develop in any criminal case. In this case, upon the record it is plain there was proof beyond a reasonable doubt and the question was whether the jury were to be convinced thereby. Of course, there is always a possibility in a criminal case that a defendant may be convicted upon counts of which he is innocent, but on this record the Court can say with some assurance that it did not happen here. The statements and attitude of defendant during the course of the investigation may have been prompted by the hope that he would not be prosecuted, but that is hardly a ground for acquittal.

In any event, the trial court carefully instructed the jury in this case. The jury found the defendant guilty on the facts shown by the evidence. There was substantial evidence to support each essential element of the finding.

The judgment of conviction is affirmed.